**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

MEREDITH HARPER MOODY,

        Plaintiff,

v.                                       Case No. 6:21-cv-1834-JRK

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Meredith Harper Moody ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of degenerative disc disease, cervical stenosis, reverse curvature of the spine, migraine headaches, bipolar disorder, severe depression, anger, rage, and anxiety. Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed January 26, 2022, at 127-28, 141-42, 157, 175, 436.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed January 26, 2022; Reference Order (Doc. No. 17), signed January 28, 2022 and entered February 1, 2022.

On August 17, 2015, Plaintiff protectively filed an application for DIB, and on August 27, 2015, she protectively filed an application for SSI. Tr. at 390-91 (DIB), 384-89 (SSI).[2] Plaintiff alleged a disability onset date of February 1, 2012 in the DIB application and August 27, 2015 in the SSI application. Tr. at 390 (DIB), 384 (SSI). The applications were denied initially, Tr. at 127-40, 155, 223, 224-26 (DIB); Tr. at 141-54, 156, 227, 228-30 (SSI), and upon reconsideration, Tr. at 157-74, 193, 233, 234-38 (DIB); Tr. at 175-92, 194, 239, 240-44 (SSI).

On March 20, 2018, an Administrative Law Judge ("ALJ") held a hearing, during which she heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 37-85. At the time, Plaintiff was forty-four (44) years old. Tr. at 44. On May 9, 2018, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision. Tr. at 200-09. Plaintiff requested review of the ALJ's decision and submitted a letter in support. Tr. at 311-12. On July 5, 2019, the Appeals Council granted Plaintiff's request to review the decision, vacated the decision, and remanded the matter to an ALJ for resolution of a number of issues related to the analysis of opinion evidence and

---

[2] The DIB and SSI applications were actually completed on August 18, 2015 and September 28, 2015, respectively. Tr. at 390 (DIB), 384 (SSI). The protective filing date for the DIB application is listed elsewhere in the administrative transcript as August 17, 2015, Tr. at 127, 157, and the protective filing date for the SSI application is listed as August 27, 2015, Tr. at 141, 175.

2

internal inconsistencies in the evaluation of Plaintiff's mental impairments. Tr. at 217-19.

On January 17, 2020, another ALJ held a second hearing, during which she heard from Plaintiff, who was represented by different counsel, and a VE. See Tr. at 86-126. On March 27, 2020, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 17-29.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council and submitted a letter in support of the request. Tr. at 5-6 (Appeals Council exhibit list and order), 379-80 (request and letter). On September 21, 2021, the Appeals Council denied Plaintiff's request for review, Tr. at 2-4, making the ALJ's Decision the final decision of the Commissioner. On November 3, 2021, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

The issue on appeal is "[w]hether the ALJ applied the correct legal standards to [Augustine Joseph, M.D.'s] opinion." Joint Memorandum (Doc. No. 19; "Joint Memo"), filed June 8, 2022, at 16 (emphasis omitted). Within this issue, Plaintiff challenges the ALJ's findings at step three of the sequential evaluation process, id. at 17-19, as well as steps four and five, id. at 19-21.

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's

3

final decision is due to be reversed and remanded for reconsideration of Dr. Joseph's opinion.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 19-28. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 1, 2012, the alleged onset date." Tr. at 19 (emphasis and

---

[3]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

4

citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: a cervical spine disorder, migraines, obesity, affective disorder, anxiety disorder and bipolar disorder." Tr. at 20 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1" (the "Listing(s)"). Tr. at 20 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except with occasional climbing of ramps and stairs, no climbing of ladders, ropes and scaffolds, no exposure to hazards such as machinery or heights, no exposure to vibration, and with an ability for performing simple routine work during an 8 hour workday and an ability for occasional contact with coworkers and general public.

Tr. at 21 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is unable to perform any past relevant work" as a "faculty member [of a] college or university." Tr. at 27 (some emphasis and citation omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 27-28. After considering Plaintiff's age ("38 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that

5

"there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 27, such as "Router," "Marker," and "Laundry classifier," Tr. at 28 (some emphasis omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from February 1, 2012, through the date of th[e D]ecision." Tr. at 28 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial

evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff argues the ALJ erred in evaluating the opinion of treating neurologist Dr. Joseph. Joint Memo at 16-21. Particularly, Plaintiff challenges the ALJ's findings at step three that Plaintiff does not meet or equal a Listing despite Dr. Joseph's opinion that tends to suggest a Listing would be equaled, id. at 17-19, and at steps four and five that Dr. Joseph's opinion is based upon subjective complaints and is inconsistent with Plaintiff's unremarkable neurological evaluations, id. at 19-21. Responding, Defendant argues as to the Listing issue that Plaintiff did not meet her burden at step three, and the ALJ did not err despite not addressing Dr. Joseph's opinion at that step. Id. at 27-30. As to Plaintiff's arguments about steps four and five, Defendant contends the ALJ assigned an RFC consistent with and supported by the evidence, and the hypothetical to the VE appropriately incorporated that RFC. Id. at 30-33.

At step three, the burden rests on the claimant to prove the existence of a Listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see

7

also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

There is no Listing that applies directly to migraine headaches, but the Administration "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." Social Security Ruling (SSR) 19-4p, 2019 WL 4169635, *7. Listing 11.02 (epilepsy) is the most analogous listed impairment. See id. SSR 19-4p explains, "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures) . . . ." Id.

Paragraph B of Listing 11.02 requires "dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. SSR 19-4p, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control, and blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or

8

repetitive simple actions, such as gestures or verbal utterances) may occur. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00H1b. "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, [the Administration] consider[s]: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)." SSR 19-4P, at *7.

Paragraph D of Listing 11.02 "requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." SSR 19-4P, at *7. In evaluating whether "a primary headache disorder is equal in severity and duration to the criteria in 11.02D," the Administration "consider[s] the same factors [it] consider[s] for 11.02B and . . . also consider[s] whether the

9

overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." Id.

Here, the Appeals Council, in vacating the original ALJ's first decision, found in part that the ALJ erred in failing to evaluate the treating source opinion of Dr. Joseph. Tr. at 217. As the Appeals Council noted, Dr. Joseph authored a medical source statement opining that Plaintiff "had chronic, intractable migraines occurring at least once every 2 weeks for at least 3 months, causing marked limitations in at least one of the following areas: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." Tr. at 217 (citation omitted); see Tr. at 823 (Dr. Joseph's opinion). The Appeals Council further indicated that "[w]hile the opinion suggested that [Plaintiff's] migraines were analogous to a seizure disorder under Listing 11.02 . . . there is no indication that the decision evaluated any Listing other than 12.06." Tr. at 217 (citation omitted). Finally, the Appeals Council stated that "[f]urther evaluation of the nature, severity, and limiting effects, if any, of [Plaintiff's] migraines is required," and "[i]n conducting this evaluation, consideration must be given to Dr. Joseph's opinion." Tr. at 217.

10

On remand, the ALJ considered at step three whether Plaintiff meets or medically equals a Listing and found she did not. Tr. at 20. The ALJ wrote that, "[p]ursuant to SSR 19-4p, [she] considered whether [Plaintiff's] headaches meet listing 11.02," but:

> the record does not reveal or document a detailed description of a typical seizure and characterized by A, B, C, or D, namely, A. Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment. OR B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. OR C. Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following: 1. Physical functioning; or 2. Understanding, remembering, or applying information; or 3. Interacting with others; or 4. Concentrating, persisting, or maintaining pace; or Adapting or managing oneself.

Tr. at 20. The ALJ also found, without citation, that although Plaintiff "complained of shaking hands, poor concentration, and light sensitivity, . . . she also reported improvement with administration of medication" and "there is no evidence [Plaintiff] had required frequent hospitalization or emergency care for the treatment of headaches." Tr. at 20.

Nowhere in the step three discussion does the ALJ identify Dr. Joseph's opinion on these issues or his treatment notes relative to the headache issue. See Tr. at 20-21. The lack of discussion of the evidence authored by Dr. Joseph

11

is perplexing, especially in light of the Appeals Council's remand order specifically identifying Dr. Joseph's opinion as speaking directly to the heart of the Listing matter.

Although the ALJ found, without citation, that the record does not document the type of headache addressed by Listing 11.02 and the ALJ referenced SSR 19-4P, the ALJ did not recognize or discuss the bulk of the <u>criteria</u> set forth in SSR 19-4P for evaluating such issues. The ALJ found "the record does not reveal or document a detailed description" of a headache episode and "characterized by A, B, C, or D," Tr. at 20, but neither of these findings is accurate. Dr. Joseph's notes do provide descriptions on the pertinent matters: frequency; severity; treatment; associated phenomena; and functional limitations. <u>See, e.g.</u>, Tr. at 718-59. And, Dr. Joseph's opinion on the medical source statement opines directly to the matters about which paragraph D addresses. <u>See</u> Tr. at 823. These inaccurate findings leave unsupported by substantial evidence the conclusions at step three. The matter must be reversed and remanded for reconsideration of that step.

The undersigned would be remiss in not recognizing that the ALJ did later address some of Dr. Joseph's notes and his opinion at later steps of the sequential evaluation process. Tr. at 23-24, 25-26. The ALJ "afforded th[e] opinion no weight." Tr. at 25. So, theoretically, if that finding were supported by substantial evidence, the error at step three could be viewed as harmless.

12

The undersigned finds, however, that the ALJ's conclusion about Dr. Joseph's opinion as it relates to the frequency of Plaintiff's migraines is not adequately supported.

In rejecting Dr. Joseph's opinion that Plaintiff "had chronic migraine headaches occurring at least once every 2 weeks for at least 3 months," the ALJ found it "is based on subjective complaints and the extent of the symptoms are not consistent with neurological examinations that are normal or unremarkable." Tr. at 26 (citations omitted). The frequency of the headaches, however, is well documented in Dr. Joseph's notes. See Tr. at 717-59. As far as the symptomology, it is unclear how the ALJ arrived at the conclusion that an individual cannot experience the symptomology associated with migraine headaches when neurological examinations are unremarkable. In sum, the ALJ's rationale for rejecting Dr. Joseph's opinion about the nature and frequency of the migraine headaches is partially unsupported and partially unexplained. Despite Defendant's argument defending the RFC findings, the ALJ's rejection of Dr. Joseph's opinion in formulating the RFC cannot serve to cure the errors at step three.

## V. Conclusion

In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to

sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Reconsider whether Plaintiff meets or medically equals a Listing at step three, ensuring explicit consideration of Dr. Joseph's notes, opinion, and any other relevant evidence, in accordance with the dictates of SSR 19-4P;

(B) If appropriate, address Dr. Joseph's opinion and findings at later steps of the sequential evaluation process; and

(C) Take such other action as may be necessary to resolve these claims properly.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 13, 2023.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record